IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CMH HOMES, INC. and
CMH MANUFACTURING, INC.,

                Plaintiffs,

v.                                                 CIVIL ACTION NO. 3:22-0504

SARAH GREENFIELD and
JOHNATHAN GREENFIELD,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Plaintiffs CMH Homes, Inc. and CMH Manufacturing, Inc.'s Complaint to Compel Arbitration (ECF No. 1), Defendants Sarah Greenfield and Jonathan Greenfield's[1] Motion to Dismiss (ECF No. 9), Plaintiffs CMH Homes, Inc. and CMH Manufacturing, Inc.'s Motion to Strike (ECF No. 14), Plaintiffs' Motion to Dismiss Defendants' Counterclaim (ECF No. 17), and Plaintiffs' Motion for a Protective Order Pending Resolution of Motion to Compel Arbitration. (ECF No. 26). In consideration of the Petition and various motions, the Court finds as follows.

On November 4, 2022, Plaintiffs CMH Homes, Inc. and CMH Manufacturing, Inc. (collectively referred to as "CMH") filed a Complaint pursuant to 9 U.S.C. § 4 of the Federal Arbitration Act (FAA) seeking an Order from this Court enforcing a Binding Dispute Resolution Agreement ("BDRA") between the parties and compelling arbitration. Ms. Greenfield signed the

---

[1] Jonathan Greenfield's name is misspelled as Johnathan in the Petition.

BDRA as part of a sales transaction in which she entered into a "Sales Agreement" with CMH Homes "to purchase a modular home and related goods and services (including but not limited to delivery and installation of the Home) . . . for the sum of $378,365.90." *Compl.* ¶7. Ms. Greenfield paid this amount in cash. *Id*. Unfortunately, after the home was transported from a manufacturing facility in Tennessee and installed on Defendants' property in Poca, West Virginia, a dispute arose as "to alleged defects in the Home and alleged[] improper work and/or negligence on the part of CMH Homes' contractors." *Id*. ¶8. Plaintiffs maintain the parties' must arbitrate their dispute pursuant to the BDRA, but Defendants disagree for a variety of reasons.

Plaintiffs attached a copy of the Sales Agreement and the BDRA to their Complaint. As to the "Scope of the Agreement," the BDRA provides, in part, that it

> applies to all pre-existing, present, or future disputes, claims, controversies, grievances, and causes of action against Seller, including, but not limited to, common law claims, contract and warranty claims, tort claims, statutory claims, administrative law claims, and any other matter in question, not otherwise excepted herein, arising out of or relating to (i) the modular or manufactured home(s) purchased, sold, owned, occupied and/or delivered in any transaction with Buyer or Beneficiaries (the "Home"), (ii) the documents related to the purchase and sale of the Home (including, but not limited to, . . . any . . . Sales Agreement . . ., (iii) any products, goods, services, insurance, supplemental warranty, service contract, and real property (including improvements to the real property) sold under or referred to in the Contract, (iv) any events leading up to the Contract, (v) the collection and servicing of the Contract, (vi) the design and construction of the Home, and (vii) the interpretation, scope, validity and enforceability of the Contract (collectively referred to as the "Claim" or "Claims"). Notwithstanding anything herein to the contrary, the jurisdiction of the Arbitrator, including objections with respect to the existence, scope, and validity of this Agreement, shall be determined solely by a court of competent jurisdiction, and not by the Arbitrator.

*BDRA*, "Scope of the Agreement," at 1, in part. The BDRA further requires the parties to mediate "in good faith" "[a]ll Claims that cannot be settled through direct discussions and negotiation[.]" *BDRA*, "Agreement to Mediate," at 1, in part. If mediation is unsuccessful, "then the Parties agree to submit their Claims to binding arbitration. Mediation of Claims is a mandatory condition precedent to arbitration or a court proceeding." *Id*.

The parties appear to agree that they engaged in mediation on January 28, 2022, but those negotiations were unsuccessful in resolving their dispute. *Compl.* ¶10. Having failed at mediation, Plaintiffs then filed their Complaint to enforce the BDRA and compel arbitration under the Agreement. Defendants oppose arbitration, arguing Plaintiffs' Complaint should be dismissed because (1) it is premature as the parties never completed the mediation process; (2) Plaintiffs waived their right to arbitration by filing this action; and (3) Plaintiff Jonathan Greenfield should be dismissed because he never signed the BDRA nor the Sales Agreement. In addition, Sarah Greenfield filed a Counterclaim against Plaintiffs alleging, inter alia, that she "was forced to sign" the Sales Agreement, incorporating the BDRA, and she had no input into either document. *Countercl.* ¶8, ECF No. 11. Furthermore, she claims that "Plaintiffs, their agents or employees induced [her] to sign [the] Sales Agreement and the [BDRA] and pay the full contract price without the intent of ever fulfilling their part of the bargain. . . . Plaintiffs, their agents or employees['] inaction under these circumstances is a fraud upon" her. *Id*. ¶17, in part (italics and internal quotation marks omitted). In turn, Plaintiffs have moved to dismiss the Counterclaim and strike "facts" made by Defendants that are outside the pleadings.

Following the briefing on the parties' respective motions to dismiss, Plaintiffs filed their Motion for a Protective Order Pending Resolution of Motion to Compel Arbitration. In their motion, Plaintiffs ask the Court to stay the deadlines in the Scheduling Order and stay discovery pending resolution of the arbitration issue. Less than two weeks after the motion was filed, the parties agreed to conduct a second mediation. The mediation was scheduled for June 15, 2023. Defendants then filed its opposition to Plaintiffs' Motion for a Protective Order, insisting that discovery should proceed.

Given that the mediation was scheduled more than two months out from when the notice was filed and the parties had opposing views on whether discovery should continue, the Court reached out to the parties and requested that Plaintiffs promptly file their Reply and asked the parties to explain how they believed the second mediation would impact the arbitration issue. In response, the parties informed the Court that they had reached an agreement to allow some limited discovery for mediation purposes and for the pending motions to be placed on hold until after the mediation occurred.

Unfortunately, in preparing for mediation, the parties have reached an impasse. As a result, on June 14, 2023, Plaintiffs filed a Notice of Withdrawal from Second Mediation, and Defendants informally requested a status conference to determine how to proceed. Plaintiffs oppose the request and simply ask the Court to issue a ruling on the arbitration issue and pending motions. For the following reasons, the Court finds a status conference unnecessary.

Although the parties spend a significant amount of their briefing discussing whether the mediation requirement in the BDRA was met, the Court first must set aside the parties' factual disputes and ask if the matter itself is one for this Court or the arbitrator to decide. In *BG Group PLC v. Republic of Argentina*, 572 U.S. 25 (2014), the Supreme Court addressed this question and stated that "courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." 572 U.S. at 34 (citation omitted). The gateway procedural issues for arbitrators to decide include whether "perquisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate" have been satisfied and further "include claims of waiver, delay, or a like defense to arbitrability." *Id.* at 34-35 (internal quotation marks and citations omitted). In applying this holding to a mediation requirement as a condition precedent to arbitration, the Fourth Circuit held in *Chorley Enterprises , Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553 (4th Cir. 2015), that a determination of whether a mediation requirement is satisfied "*must be decided by the arbitrator, not the court*." 807 F.3d at 565 (emphasis added).

Here, the parties agree that the mediation requirement in the BDRA is a condition precedent to arbitration. As in *B.G. Group*, the mediation requirement in the BDRA "determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all." *B.G. Group*, *Inc.*, 572 U.S. at 35 (italics original). Thus, it is clear that under both *B.G. Group* and *Chorley Enterprises* that the arbitrator, not the court, must decide whether Plaintiffs satisfied the mediation prerequisite. If the arbitrator ultimately decides there is no obligation to arbitrate because Plaintiffs failed to satisfy the mediation requirement, "the parties may then seek relief in court under the FAA." *Chorley Enter.'s,* 807 F.3d at 565 (citation omitted).

In the alternative, Defendants argue that there is no enforceable, valid contract because Plaintiffs acted fraudulently by persuading her "to sign [the] Sales Agreement and the [BDRA] and pay the full contract price without the intent of ever fulfilling their part of the bargain. . . . Plaintiffs, their agents or employees['] inaction under these circumstances is a fraud upon Ms. Greenfield." *Countercl.* ¶17, in part (italics and internal quotation marks omitted). However, in *Prima Paint Corp. v. Flood & Conklin Mfg., Co.*, 388 U.S. 395 (1967), the Supreme Court held that, while a federal court may adjudicate a claim of fraud in the inducement under § 4 of the FAA "of the arbitration clause itself" as it "goes to the making of the agreement to arbitrate,"[2] the court may not "consider claims of fraud in the inducement of the contract generally." 388 U.S. at 403-04 (footnotes and internal quotation marks omitted); *see also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (stating "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract—we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene"); *Senior Mgmt., Inc. v. Capps*, 240 F. App'x 550, 553 (4th Cir. 2007) ("If the plaintiff asserts fraud in the inducement of the contract as a whole, the district court must defer the matter to an arbitrator to determine the validity of the claim. If the plaintiff asserts fraud in the inducement to enter the arbitration provision, the district court may adjudicate the claim."). As Defendants in this case argue Mrs. Greenfield was fraudulently persuaded to sign the entirety of the Sales Agreement, not just BDRA, the issue of fraud is reserved for the arbitrator to decide, not the Court.

---

[2]Section 4 provides, in relevant part: "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Defendants further argue the Court should not enforce the arbitration agreement because Plaintiffs waived their rights to invoke the FAA by filing this litigation. In support, Defendants cite *Degidio v. Crazy Horse Saloon & Restaurant Inc.*, 880 F.3d 135 (4th Cir. 2018), in which the Fourth Circuit held "[a] litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." 880 F.3d at 140 (citations omitted). However, in *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708 (2022), the Supreme Court more recently held that courts may not consider prejudice as a factor in deciding whether a party has waived its right to compel arbitration. Rather, courts must consider arbitration contracts like other contracts and "apply the usual federal procedural rules[.]" *Id.* at 1713-14. Additionally, in any event, the Court finds this case is not one in which Plaintiffs have engaged in substantial litigation before asking the Court to enforce the arbitration agreement. Instead, the whole crux of the action brought by Plaintiffs is to enforce arbitration and avoid litigation on the underlying claims in federal court. Therefore, the Court rejects Defendants' waiver argument.

Lastly, the BDRA provides that it "applies to and governs the rights of intended beneficiaries of this Agreement, who include . . . anyone claiming an interest in the Home[.]" *BDRA*, at 1. Therefore, Plaintiffs assert they have properly named Jonathan Greenfield as a Defendant "[a]s the husband of Sara Greenfield . . . [who] is clearly a person claiming an interest in the Home." *Compl.* at 12. However, Defendants contend there is no evidence Mr. Greenfield has claimed any interest in the home and he is not a signatory to any of the contracts with Plaintiffs. Thus, Defendants argue the Court should reject Plaintiffs' conclusory allegation and dismiss him from this action.

In considering the parties' arguments, the Court first recognizes that as a general matter "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416 (4th Cir. 2000) (citations omitted); *see also AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (stating "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (internal quotation marks omitted and citations omitted)). Additionally, "mandatory arbitration is not the default form of dispute resolution but rather is permitted only when the parties agree to it." *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 258 (4th Cir. 2021). Notwithstanding, the Fourth Circuit recognized in *Int'l Paper* that there are five exceptions to this general rule: "1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel." *Int'l Paper*, 206 F.3d. at 417 (citing *Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F3d 773, 776 (2d Cir. 1995) (other citations omitted)). However, Plaintiffs do not directly argue that any of these exceptions apply. Instead, Plaintiffs cite *M.T. Bores, LLC v. Mountain Valley Pipeline, LLC*, 552 F. Supp.3d 580 (S.D. W. Va. 2021), for the position that a nonsignatory can be bound to an arbitration agreement if they are intended beneficiaries of the agreements. Although such possibility exists, the Court finds it does not apply here.

In *M.T. Bores*, the district court considered whether a nonsignatory can be bound to arbitrate under a third-party beneficiary theory under West Virginia law. *Id.* at 588. This theory allows a nonsignatory "to maintain a cause of action arising from the contract only if it was made for his or her sole benefit." *Id.* (internal quotation marks and citation omitted). In opposite terms, it means that, if a nonsignatory can enforce a contract made for his or her sole benefit, the

nonsignatory also can be bound by that same contract. In applying these principles to the facts before it, the district court found, *inter alia*, that the contract was not made for the nonsignatory's sole benefit and, thus, the third-party beneficiary theory was not applicable. *Id.*

Similarly, in this case, there are no allegations that Mrs. Greenfield entered into the contract for the sole benefit of her husband. Thus, the fact he may someday receive an incidental benefit from living in the house is not enough to bind him to the arbitration agreement.[3] *Cf. Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1305 (10th Cir. 2017) (finding that the arbitration clause contained in the contract made between CMH Homes and a wife could not be enforced against the nonsignatory husband for being "an intended third-party beneficiary [when he had] . . . not accepted the benefit (here, the right to compel arbitration) or otherwise sought to enforce the terms of the contract," as such a rule would be nonsensical as it would bind "unwitting third parties . . . to a contract without knowing its terms or ever realizing some benefit" (citation omitted)). Therefore, the Court rejects Plaintiffs' beneficiary theory.

In *M.T. Bores*, the district court also discussed whether a nonsignatory should be equitably estopped from refusing to arbitrate. *Id*. at 585. The district court recognized that "estoppel 'precludes a party from asserting rights [it] otherwise would have had against another when [its] own conduct renders assertion of those rights contrary to equity." *Id.* at 586 (quoting *R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n*, 384 F.3d 157, 160 (4th Cir. 2004) (internal quotation marks omitted in *M.T. Bores*)). When raised in arbitration, estoppel "applies when one party

---

[3]Defendants claim no one currently lives in the house because it is uninhabitable.

attempts to hold [another party] to the terms of [an] agreement while simultaneously trying to avoid the agreement's arbitration clause." *Id*. (internal quotation marks and citations omitted).

In applying these principles here, the Court finds that Mr. Greenfield has not made any claim against Plaintiffs. In fact, the Counterclaim filed in this case was brought solely by Mrs. Greenfield. There simply is nothing that shows that Mr. Greenfield is attempting to litigate his rights under the contract while he simultaneously is attempting to avoid application of the arbitration clause. Therefore, the Court also finds Plaintiffs have failed to show an exception under the doctrine of equitable estoppel. *See Miller v. Dell Fin. Servs., L.L.C.*, Civ. Act. No. 5:08-01184, 2009 WL 5794126, *6 (S.D. W. Va. June 23, 2009) (holding where nonsignatory husband was "neither a party to the Agreement, nor is suing to enforce a right contained in the Agreement[,] . . . he cannot be compelled to arbitrate under an equitable estoppel theory").

Plaintiffs next argue Mr. Greenfield should be required to arbitrate because he is both a necessary party and an indispensable party under Rule 19 of the Federal Rules of Civil Procedure. The Court disagrees.

> Rule 19(a)(1) requires a person to be joined if feasible when:
>
> (1) . . . [a] person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>     (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
>     (B) that person claims an interest relating to the subject of the action and is so situated that

>> disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Rule 19 involves "a two-step inquiry." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 950 (4th Cir. 2020) (citation and internal quotation marks omitted). First, the court must determine if the "nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b)." *Id.* (citation and internal quotation marks omitted). "A party might be necessary under either with Rule 19(a)(1)(A) or (B)." *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 434 (4th Cir. 2014). If a person is found to be necessary, he or she should be joined in the action. However, if that person's "joinder destroys diversity, the court must determine whether the proceeding can continue in its absence or whether it is indispensable pursuant to Rule 19(b) and the action must be dismissed." *McKiver*, 980 F.3d at 950 (citation and internal quotation marks omitted). Decisions under Rule 19 are to "be made pragmatically, in the context of the substance of each case, and courts must take into account the possible prejudice to all parties, including those not before it." *Home Buyers*, 750 F.3d at 434 (citation and internal quotation marks omitted).

In applying these criteria, Plaintiffs maintain that Mr. Greenfield's participation in arbitration is necessary because he has an interest in the litigation and, if he is not joined in the arbitration, they might be subject to inconsistent rulings if he files his own action. However, the

Fourth Circuit has stated that an interest "should be more than a financial stake, and more than speculation about a future event." *McKiver*, 980 F.3d at 952 (citation and internal quotation marks omitted). Here, Mr. Greenfield has not filed any action against Plaintiffs, and he has not joined in his wife's Counterclaim against Plaintiffs. Indeed, it is speculative as to whether he ever will. Moreover, as previously discussed, Mr. Greenfield is a nonsignatory to the Sales Agreement and he has not asserted any rights under the contract that is now at the heart of these proceedings. Certainly, Mr. Greenfield's absence does not prevent complete relief of the dispute between Plaintiffs and Mrs. Greenfield. Likewise, as Mr. Greenfield has not claimed any interest related to the contract, subsection (B)(i) and (ii) of Rule 19 become irrelevant.

Nevertheless, Plaintiffs further assert the Court should accept their factual pleading that Mr. "Greenfield is clearly a person claiming an interest in the Home" and require him to participate in the arbitration. *Compl.* at 12. If Mr. Greenfield later disclaims his interests, Plaintiffs argue he may be dismissed from this action at that point. However, the Court finds this allegation is conclusory and lacks factual support as Mr. Greenfield has neither made a claim against Plaintiffs in this action nor filed any other actions against them. As it is well established that "[t]he Court is not required to accept . . . conclusory allegations" that are devoid of references to real events, the Court declines to do so here. *Totten v. Scaife*, Civ. Act. No. 3:21-cv-0306, 2022 WL 211592, at *4 n.3 (S.D. W. Va. Jan. 24, 2022) (citation omitted); *Carter v. Bowie State Univ.*, Civ. Act. No. GJH-20-2725, 2022 WL 717043, at *6 (D. Md. Mar. 9, 2022) (stating "[t]he Court need not, however, accept . . . conclusory factual allegations devoid of any reference to actual events" (citing *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979)). Moreover, the Court finds it would be a peculiar result if a nonsignatory to a contract containing an arbitration clause,

who does not meet any of the exceptions announced in *International Paper*, could be forced to arbitrate claims that the nonsignatory has never brought. Therefore, given the circumstances of this case, the Court rejects Plaintiffs' argument that Jonathan Greenfield should be joined in the arbitration pursuant to Rule 19. Thus, having found no reason to compel Mr. Greenfield to participate in arbitration, the Court **GRANTS** Defendants' Motion to Dismiss him as a Defendant.

Accordingly, for the foregoing reasons, the Court **GRANTS** Plaintiffs' request in their Complaint to compel arbitration as to Sarah Greenfield to the extent described above, **GRANTS** Defendants' Motion to Dismiss as to Jonathan Greenfield (ECF No. 9), and **DENIES AS MOOT** Plaintiffs' Motions to Strike (ECF No. 14), to Dismiss Defendants' Counterclaim (ECF No. 17), and for a Protective Order Pending Resolution of Motion to Compel Arbitration. ECF No. 26. Additionally, as the issues raised in Mrs. Greenfield's Crossclaim are subject to arbitration if the arbitrator determines the prerequisite to arbitration is met, the Court **DISMISSES** this action **WITHOUT PREJUDICE**. *See Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (finding dismissal pending arbitration appropriate where "all of the issues presented in a lawsuit are arbitrable" (citation omitted)).

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: June 26, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE